# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
April 21, 2016 Session

## IN RE: KAITLIN W., ET AL.

### Appeal from the Juvenile Court for Knox County
### No. 43589    Timothy E. Irwin, Judge

---

### No. E2015-01553-COA-R3-PT-FILED-MAY 16, 2016

---

This appeal arises from a termination of parental rights. The Tennessee Department of Children's Services ("DCS") filed a petition in the Juvenile Court for Knox County ("the Juvenile Court") seeking to terminate the parental rights of Remus W. ("Father") to his five children ("the Children"). After a trial, the Juvenile Court found that the grounds of wanton disregard, persistent conditions, and severe child abuse had been proven against Father by clear and convincing evidence, and that termination of Father's parental rights was in the Children's best interest. Father appeals. We reverse the judgment of the Juvenile Court as to the grounds of wanton disregard and persistent conditions. We affirm the Juvenile Court as to the ground of severe child abuse and as to its best interest determination. Having reversed the Juvenile Court as to only two of the three grounds found for termination, we, therefore, affirm the judgment of the Juvenile Court terminating Father's parental rights.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed, in Part, and, Reversed, in Part; Case Remanded

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Robin Gunn, Knoxville, Tennessee, for the appellant, Remus W.

Herbert H. Slatery, III, Attorney General and Reporter, and, Madeline B. Brough, Assistant Attorney General, for the appellee, the Tennessee Department of Children's Services.

# OPINION

## Background

The Children in this case have had a long and troubled family history with multiple instances of DCS intervention. Kaitlin, born July 1999, has a learning disability. The remaining children have a different mother than Kaitlin: Tanner, born October 2007; twins Jericho and Jeremiah, born August 2010; and Kloe, born May 2012.[1] DCS first became involved with this family in 2009 when DCS filed a petition requesting no contact and compliance based upon allegations that Kaitlin and Tanner were in danger of abuse. Several trial home placements were attempted for the Children, some of whom were born during the pendency of the case. The main issue necessitating DCS involvement centered on Father's abuse of drugs—specifically, prescription pain medication. Investigations by DCS revealed missing pills and incorrect pill counts. Nevertheless, Father was granted additional opportunities to parent the Children on the condition of and in reliance upon his assertions that he no longer took prescription pain medications. After a dramatic drug-related incident in July 2014, the Children were removed from Father for the final time.

In September 2014, DCS filed a petition seeking to terminate Father's parental rights to the Children. This case was tried in July and August 2015. The central testimony focused on the incident leading to the final removal of the Children from Father. On July 22, 2014, Father stopped by a Pilot convenience store and sent Kaitlin in to purchase a bottle of water. This was no ordinary errand for a child, however. Kaitlin knew from previous occurrences that Father used bottles of water to facilitate the injection of his pain medication. Afterwards, Father drove to Carter Park with Kaitlin and Tanner, then ages fifteen and six.

What happened at the park that day materially is undisputed. Father proceeded to inject drugs intravenously and, ultimately, entered into a state of stupor or total unconsciousness. Kaitlin and Tanner, meanwhile, were without adult supervision for eight to ten hours. When Kaitlin checked on Father, he had passed out and could not be awakened. Kaitlin called a relative for help, but no one removed the children from the park. During this episode, Father remained inside the vehicle. An unidentified adult male, apparently sober, was with Father in the car. Kaitlin and Tanner remained outside of the vehicle. Nevertheless, the vehicle was accessible to Kaitlin and Tanner during this time. Eventually, the police arrived. The officers found Father intoxicated. Inside the vehicle were needles and bottles of pills strewn about. Father was arrested.

---

[1] The mothers of the Children are not parties to this appeal.

The Children were removed from Father's care. Father later pled guilty to public intoxication and was sentenced to no jail time. The undisputed testimony at trial is that the Children are thriving in their respective pre-adoptive homes after being removed from Father's care this final time.

In December 2015, the Juvenile Court entered its order terminating Father's parental rights to the Children. The Juvenile Court found, by clear and convincing evidence, that the grounds of severe child abuse, wanton disregard, and persistent conditions had been proven against Father, and, also by clear and convincing evidence, that termination of Father's parental rights was in the Children's best interest. We quote from the Juvenile Court's order, first as pertinent to grounds for termination:

[(Ground 1) severe child abuse by Father against children Kaitlin and Tanner]

In the instant case, there is no question that the children, Kaitlin and Tanner [W.], were not physically injured during the course of the events that occurred on July 22, 2014; however, the fact that they were not physically harmed, in no way diminishes the risk of serious bodily injury or death to which these two children were exposed by the actions of their father on the evening of July 22, 2014. The evidence of what occurred on that day is uncontroverted. [Father] drove Kaitlin and Tanner to a community park for the purpose of injecting powerful prescription medications into his veins. Upon injecting one or more of the prescription medications he brought with him, morphine sulfate, oxycodone, and/or alprazolam, [Father] became unconscious for period of time, leaving his two children to fend for themselves. Although Kaitlin was 15 years old at the time, her diminished cognitive capacity rendered her an inappropriate sole caregiver for her six-year-old little brother, Tanner. Becoming unconscious and leaving the children to their own devices, exposed the children to a dangerous and unpredictable environment in that they had essentially no adult supervision and protection to keep dangerous individuals at bay or to steer the children clear of whatever physical dangers may have been present at the park. Furthermore, Kaitlin's testimony established that when she returned to her father's car, she saw several tablets of medication lying about unsecured in the car. She further testified that this prescription medication that was loose in the car would have been within Tanner's reach had he been in the car. This presence of the unsecured prescription medications also presented a substantial risk or danger of serious bodily injury or death to Kaitlin and Tanner [W.]. Accordingly, this Court is of the opinion that the Department of Children's

Services has presented clear and convincing proof of severe child abuse on the part of the father, [Father], against his children, Kaitlin and Tanner [W.], that meets the definition of T.C.A. § 37-1-102(b)(21)(A), and as such, the Department has successfully established T.C.A. § 36-1-113(g)(4) as a ground for the termination of [Father's] parental rights to his five children, Kaitlin, Tanner, Jeremiah, Jericho and Kloe [W.].

[(Ground 2) wanton disregard]

Counsel for [Father] in her closing arguments informed the Court that [Father] was released from jail several hours after his arrest and that ultimately his criminal charges stemming from the events of July 22, 2014 were dismissed. [Father's] counsel further maintained that her client's brief period of incarceration was not sufficient or long enough to satisfy or constitute "...part of the four months immediately preceding the institution of [the termination petition]" as required by T.C.A. § 36-1-102(1)(A)(iv). This Court rejects [Father's] argument. This Court chooses to read and interpret T.C.A. § 36-1-102(1)(A)(iv) using the plain meaning of the words chosen by this State's legislature. This Court is of the opinion that being in jail or incarcerated for any amount of time whether it be 10 minutes or 10 hours, certainly constitutes a part or portion of the four months preceding the filing of the action assuming that the filing of the action is timely.

***

The child, Kaitlin, had witnessed her father engage in intravenous drug use several times over the preceding four to five years and she recalled that he would act "crazy" after injecting drugs. Even Kaitlin was acutely aware that she and her brother were not safe and that they needed help as evidenced by the phone call she made from the scene to a paternal aunt. This Court concludes that [Father's] conduct on July 22, 2014, involving his taking Kaitlin and Tanner to a community park so that he could abuse prescription medication by intravenous injection constitutes wanton disregard for the welfare of not only Kaitlin and Tanner, but for the welfare of all his children. The Court further finds by clear and convincing evidence that [Father] engaged in multiple acts in the year preceding his incarceration on July 22, 2014, constituting wanton disregard for the welfare of his children. The proof at trial established that (a) [Father] passed off urine samples collected from his children as his own for the purpose of deceiving this Court, the Department, and its providers; (b) [Father] frequently abused prescription medication including powerful

-4-

opiates such as morphine sulfate while caring for the children; (c) [Father] lied to this Court, the Department, and its providers, about ceasing or quitting his use of prescription medication; (d) [Father] willfully violated the orders of this Court prohibiting the children from having unsupervised contact with Jesse [B.] and contact with Jennifer [P.] by allowing these two females to reside periodically in his home; (e) [Father] hid Jennifer [P.] and Jesse [B.] from the Department and its providers on home visits so that he would not be caught violating the orders of this Court; (f) [Father] instructed his child, Kaitlin, to lie to the Department and its representatives about his drug use and who was living in the home; (g) [Father] continued to engage in domestic violence with Jesse [B.] in the presence of the children; and (h) [Father] failed to meet the special medical needs of Kaitlin and Tanner after custody of the children had been returned to him.

[(Ground 3) persistent conditions]

At the time the Department's petition was filed, the [W.] children had been removed from their father, [Father], for two months and not the requisite period of six months. This Court, however, is of the opinion that [Father] orchestrated a campaign of deceit in 2013 and 2014 perpetrating a fraud upon the Court. [Father's] deceptive acts in 2013 resulted in the initiation of trial home placements of the children with him in the Summer of 2013 and ultimately the entry of two additional orders, the first on September 17, 2013 [Re: Tanner [W.]] and the second on October 15, 2013 [Re: Kaitlin, Jeremiah, Jericho and Kloe], restoring full legal and physical custody of the children to [Father].  But for [Father's] campaign of deceit, and given the parents' lack of progress toward reunification as determined by this Court on November 27, 2012, this Court would not have initiated a trial home placement with [Father] nor would it have restored legal and physical custody of the children to [Father] in the fall of 2013.

***

This Court has painstakingly outlined the numerous failed efforts of [Father] and Ms. [B.] at rectifying the issues that led to the children's removals that present a great risk of harm to the children's health and well-being.  The Department, in this matter, has done more than go the extra mile in its attempts to reunify these children with their parents.  These failed attempts at reunification lay at the feet of the parents and not the Department.  If history truly is a predictor of the future, then the history in this case with respect to the parents suggest there is little or no chance that

the conditions of substance abuse and domestic violence will be remedied at an early date so that the children may be safely returned to the parents in the near future.

We next quote, in part, from the Juvenile Court's order pertaining to the Children's best interest:

This Court is of the opinion that to change the placement of the [W.] children at this point in time would have a devastating impact on the psychological well-being of all the children. Since January 2010, the [W.] children have been moved from pillar to post, and in and out of their parents' care. Kaitlin, Tanner, and Kloe [W.] have experienced more stability over the past twelve months than they have since first coming into the protective custody of the Department. They have thrived in a pre-adoptive home. The twins, Jeremiah and Jericho, have been fortunate enough to be placed in the same foster home where they have resided each time they come into custody beginning on November 28, 2010. Their foster mother and father are the most constant and reliable persons in their lives. Even during the year of July 2013 through July 2014, [Father] relied on the twins' foster parents to care for the twins two to three weeks out of every month. The twins' foster parents are in essence the only true parents the twins have ever known.

***

The Court has concluded that [Father] engaged in numerous acts constituting wanton disregard for the welfare of his children and committed severe child abuse against Kaitlin and Tanner [W.] on July 22, 2014, under circumstances previously described in this order. Likewise, this Court determined that Jesse [B.] committed severe child abuse against Kloe [W.], through her opiate abuse during the course of her pregnancy with the child, knowing such abuse placed her child in danger of serious bodily harm. Furthermore, during the years of 2013 and 2014, Kaitlin's testimony established that she witnessed her father's intravenous substance abuse and domestic violence between her father and Ms. [B.] in the family home, which this Court considers to be on going emotional and psychological abuse by the parents of all the children who were present.

Father timely appealed to this Court.

## Discussion

Although not stated exactly as such, Father raises the following issues on appeal: 1) whether the Juvenile Court erred in finding the ground of wanton disregard when Father was incarcerated for less than 24 hours; 2) whether the Juvenile Court erred in finding the ground of persistent conditions when the Children had not been removed from Father's home for a period of at least six months; and, 3) whether the Juvenile Court erred in finding the ground of severe child abuse based upon Father's drug abuse incident at the park. Although Father does not appeal the Juvenile Court's finding of best interest, we review it nevertheless.

Our Supreme Court recently reiterated the standard of review for cases involving termination of parental rights stating:

> A parent's right to the care and custody of her child is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clauses of the federal and state constitutions.[2] *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *In re Adoption of Female Child*, 896 S.W.2d 546, 547-48 (Tenn. 1995); *Hawk v. Hawk*, 855 S.W.2d 573, 578-79 (Tenn. 1993). But parental rights, although fundamental and constitutionally protected, are not absolute. *In re Angela E.*, 303 S.W.3d at 250. "'[T]he [S]tate as *parens patriae* has a special duty to protect minors . . . .' Tennessee law, thus, upholds the [S]tate's authority as *parens patriae* when interference with parenting is necessary to prevent serious harm to a child." *Hawk*, 855 S.W.2d at 580 (quoting *In re Hamilton*, 657 S.W.2d 425, 429 (Tenn. Ct. App. 1983)); *see also Santosky v. Kramer*, 455 U.S. 745, 747 (1982); *In re Angela E.*, 303 S.W.3d at 250. "When the State initiates a parental rights termination proceeding, it seeks not merely to infringe that fundamental liberty interest, but to end it." *Santosky*, 455 U.S. at 759. "Few consequences of judicial action are so grave as the severance of natural family ties." *Id.* at 787; *see also M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996). The parental rights at stake are "far more precious than any property right." *Santosky*, 455 U.S. at 758-59. Termination of parental rights has the legal effect of reducing the parent to

---

[2] U.S. Const. amend. XIV § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law . . . ."). Similarly, article 1, section 8 of the Tennessee Constitution states "[t]hat no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land."

the role of a complete stranger and of "severing forever all legal rights and obligations of the parent or guardian of the child." Tenn. Code Ann. § 36-1-113(l)(1); *see also Santosky*, 455 U.S. at 759 (recognizing that a decision terminating parental rights is "*final* and irrevocable"). In light of the interests and consequences at stake, parents are constitutionally entitled to "fundamentally fair procedures" in termination proceedings. *Santosky*, 455 U.S. at 754; *see also Lassiter v. Dep't of Soc. Servs. of Durham Cnty., N.C.*, 452 U.S. 18, 27 (1981) (discussing the due process right of parents to fundamentally fair procedures).

Among the constitutionally mandated "fundamentally fair procedures" is a heightened standard of proof – clear and convincing evidence. *Santosky*, 455 U.S. at 769. This standard minimizes the risk of unnecessary or erroneous governmental interference with fundamental parental rights. *Id.*; *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010). "Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings." *In re Bernard T.*, 319 S.W.3d at 596 (citations omitted). The clear-and-convincing-evidence standard ensures that the facts are established as highly probable, rather than as simply more probable than not. *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005); *In re M.A.R.*, 183 S.W.3d 652, 660 (Tenn. Ct. App. 2005).

Tennessee statutes governing parental termination proceedings incorporate this constitutionally mandated standard of proof. Tennessee Code Annotated section 36-1-113(c) provides:

> Termination of parental or guardianship rights must be based upon:
>
> (1) A finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and
> (2) That termination of the parent's or guardian's rights is in the best interests of the child.

This statute requires the State to establish by clear and convincing proof that at least one of the enumerated statutory grounds[3] for termination exists

---

[3] Tenn. Code Ann. § 36-1-113(g)(1)-(13).

and that termination is in the child's best interests. *In re Angela E.*, 303 S.W.3d at 250; *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). "The best interests analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination." *In re Angela E.*, 303 S.W.3d at 254. Although several factors relevant to the best interests analysis are statutorily enumerated,[4] the list is illustrative, not exclusive. The parties are free to offer proof of other relevant factors. *In re Audrey S.*, 182 S.W.3d at 878. The trial court must then determine whether the combined weight of the facts "amount[s] to clear and convincing evidence that termination is in the child's best interest." *In re Kaliyah S.*, 455 S.W.3d 533, 555 (Tenn. 2015). These requirements ensure that each parent receives the constitutionally required "individualized determination that a parent is either unfit or will cause substantial harm to his or her child before the fundamental right to the care and custody of the child can be taken away." *In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999).

Furthermore, other statutes impose certain requirements upon trial courts hearing termination petitions. A trial court must "ensure that the hearing on the petition takes place within six (6) months of the date that the petition is filed, unless the court determines an extension is in the best interests of the child." Tenn. Code Ann. § 36-1-113(k). A trial court must "enter an order that makes specific findings of fact and conclusions of law within thirty (30) days of the conclusion of the hearing." *Id.* This portion of the statute requires a trial court to make "findings of act and conclusions of law as to whether clear and convincing evidence establishes the existence of each of the grounds asserted for terminating [parental] rights." *In re Angela E.*, 303 S.W.3d at 255. "Should the trial court conclude that clear and convincing evidence of ground(s) for termination does exist, then the trial court must also make a written finding whether clear and convincing evidence establishes that termination of [parental] rights is in the [child's] best interests." *Id.* If the trial court's best interests analysis "is based on additional factual findings besides the ones made in conjunction with the grounds for termination, the trial court must also include these findings in the written order." *Id.* Appellate courts "may not conduct de novo review of the termination decision in the absence of such findings." *Id.* (citing *Adoption Place, Inc. v. Doe*, 273 S.W.3d 142, 151 & n.15 (Tenn. Ct. App. 2007)).

---

[4] Tenn. Code Ann. § 36-1-113(i).

### B. Standards of Appellate Review

An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). *In re Bernard T.*, 319 S.W.3d at 596; *In re Angela E.*, 303 S.W.3d at 246. Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. *In re Bernard T.*, 319 S.W.3d at 596; *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. *In re Bernard T.*, 319 S.W.3d at 596-97. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. *In re M.L.P.*, 281 S.W.3d at 393 (quoting *In re Adoption of A.M.H.*, 215 S.W.3d at 810). Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness. *In re Angela E.*, 303 S.W.3d at 246.

*In re: Carrington H.*, No. M2014-00453-SC-R11-PT, 2016 WL 819593, ___ S.W.3d ___ (Tenn. Jan. 29, 2016) (footnotes in original but renumbered), *pet. for cert. docketed* (April 27, 2016).

We first address whether the Juvenile Court erred in finding the ground of wanton disregard when Father was incarcerated for less than 24 hours. Father, arguing that his brief time spent in custody does not serve as a trigger for the ground of wanton disregard, cites to *In re: Courtney N.* where this Court expounded upon the criteria for "incarceration" contained in Tenn. Code Ann. § 36-1-102(1)(A)(iv). We stated:

Returning to the case at bar, nowhere in its opinion, or its findings in support thereof, did the trial court reference Section 36-1-102(1)(A)(iv) or find that it applied to Mother, who spent a total of six or seven hours during one day in jail in the months before the petition was filed. On our considered review, we conclude that this does not place Mother within the class of "incarcerated or recently incarcerated parents" to which Tenn. Code Ann. 36-1-102(1)(A)(iv) applies. Accordingly, the trial court erred in

terminating Mother's rights on the ground of abandonment based on "conduct prior to incarceration which exhibits a wanton disregard for the welfare of the child" pursuant to Section 36-1-102(1)(A)(iv). This ground is hereby vacated.

*In re: Courtney N.*, No. E2012-01642-COA-R3-PT, 2013 WL 2395003, at *7 (Tenn. Ct. App. May 31, 2013), *no appl. perm. appeal filed*.

DCS argues, and the Juvenile Court agrees, that the statute requires no minimum time period of incarceration, only that the parent was incarcerated. As pertinent, Tenn. Code Ann. § 36-1-113(g)(1) provides:

(g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and non-exclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:

(1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred;

Tenn. Code Ann. § 36-1-113(g)(1) (Supp. 2015). In pertinent part, Tenn. Code Ann. § 36-1-102 provides:

(1)(A) For purposes of terminating the parental or guardian rights of a parent or parents or a guardian or guardians of a child to that child in order to make that child available for adoption, "abandonment" means that:

* * *

(iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child; or

-11-

Tenn. Code Ann. § 36-1-102(1)(A)(iv) (Supp. 2015).

DCS correctly states the statute. However, this Court took the reasoned position in *In re: Courtney N.* that a parent spending a few hours in jail does not rise to the level our General Assembly intended in establishing the ground of wanton disregard. DCS asks that we depart from *In re: Courtney N.* We decline to do so. In the present case, Father bonded out and never was sentenced to jail or prison. Father submits that the time he spent in police custody was less than 24 hours, a position DCS does not contradict. Indeed, DCS acknowledges that there is no proof as to the length of time Father spent in jail, only that he did in fact enter police custody when he was arrested. This fact, or absence of fact, also supports Father's position on this issue.

In keeping with *In re: Courtney N.*, we decline to find, particularly in the absence of adequate proof in the record, that Father's entry into police custody and apparent brief incarceration thereafter suffice to trigger the examination of pre-incarceration conduct relative to the ground of wanton disregard. We find and hold that Father's brief incarceration resulting solely from his arrest and not any court-imposed sentence of incarceration does not place Father "within the class of 'incarcerated or recently incarcerated parents' to which Tenn. Code Ann. 36-1-102(1)(A)(iv) applies." *In re: Courtney N.*, 2013 WL 2395003, at *7. We reverse the judgment of the Juvenile Court as to the ground of wanton disregard.

We next address whether the Juvenile Court erred in finding the ground of persistent conditions when the Children had not been removed from Father's home for a period of at least six months. As pertinent to this issue, Tenn. Code Ann. § 36-1-113(g)(3) provides:

> (3) The child has been removed from the home of the parent or guardian by order of a court **for a period of six (6) months** and:
>
> (A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent or parents or the guardian or guardians, still persist;
> (B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent or parents or the guardian or guardians in the near future; and
> (C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home;

Tenn. Code Ann. § 36-1-113(g)(3) (Supp. 2015)(emphasis added).

It is undisputed by the parties and the Juvenile Court that the Children were not removed from the home of Father for a period of six months or more. However, DCS argues, as found by the Juvenile Court, that Father engaged in a campaign of deceit regarding his drug abuse, and that the Juvenile Court never would have returned the Children to Father's care had it known that he continued to abuse drugs.

According to DCS, we should look to the "aggregate time" the Children were removed from Father over the long course of this case from circa 2010 through 2014. This is a novel argument, but DCS cites to no case law supporting such an expansive reading of the statute. The statute is quite clear on this point. One required element of persistent conditions is that the child has been removed from the home of the parent or guardian by court order for a period of at least six months. Deceit or no deceit, the statute is unambiguous as to this time requirement.

In the present case, the Children had been removed from the home of Father for less than three months when the petition to terminate parental rights was filed. Therefore, the ground of persistent conditions cannot be established here. We reverse the judgment of the Juvenile Court as to the ground of persistent conditions.

We next address whether the Juvenile Court erred in finding the ground of severe child abuse based upon the drug abuse incident at the park. In pertinent part, Tenn. Code Ann. § 36-1-113(g) provides:

> (4) The parent or guardian has been found to have committed severe child abuse as defined in § 37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate parental rights or the petition for adoption to have committed severe child abuse against the child who is the subject of the petition or against any sibling or half-sibling of such child, or any other child residing temporarily or permanently in the home of such parent or guardian;

Tenn. Code Ann. § 36-1-113(g)(4) (Supp. 2015). In pertinent part, Tenn. Code Ann. § 37-1-102 provides:

> (21) "Severe child abuse" means:
>
> (A)(i) The knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or

death and the knowing use of force on a child that is likely to cause serious bodily injury or death;

(ii) "Serious bodily injury" shall have the same meaning given in § 39-15-402(d).

(B) Specific brutality, abuse or neglect towards a child that in the opinion of qualified experts has caused or will reasonably be expected to produce severe psychosis, severe neurotic disorder, severe depression, severe developmental delay or intellectual disability, or severe impairment of the child's ability to function adequately in the child's environment, and the knowing failure to protect a child from such conduct;

(C) The commission of any act towards the child prohibited by §§ 39-13-502 – 39-13-504, 39-13-515, 39-13-522, 39-15-302, 39-15-402, and 39-17-1005 or the knowing failure to protect the child from the commission of any such act towards the child; or

(D) Knowingly allowing a child to be present within a structure where the act of creating methamphetamine, as that substance is identified in § 39-17-408(d)(2), is occurring;

Tenn. Code Ann. § 37-1-102 (b)(21) (2014).

The Juvenile Court's finding of severe child abuse was based upon the incident at the park where Father injected drugs intravenously and let the Children roam unattended for several hours. The record on appeal does not show that the Children physically were harmed during the episode. Nevertheless, the Children were exposed to serious dangers including serious bodily injury or death. Father's car, which was accessible to the Children, was littered with syringes and dangerous prescription medication. Father left his fifteen year old daughter, who struggles with a learning disability, to fend for herself and her six year old sibling for hours while he proceeded to abuse drugs. This shockingly irresponsible incident did not occur by chance. Father chose to embark on this sordid expedition, and in so doing, he exposed Kaitlin and Tanner to extreme and self-evident risks. It was only a matter of luck that Kaitlin and Tanner did not suffer serious bodily injury. We find, as did the Juvenile Court, that the ground of severe child abuse is proven against Father by the standard of clear and convincing evidence.[5]

---

[5] Tanner and Kaitlin directly were subjected to severe child abuse, but this finding of severe child abuse applies to all of the Children. *See In re: Garvin M.*, E2013-02080-COA-R3-PT, 2014 WL 1887334, at *4 (Tenn. Ct. App. May 9, 2014), *no appl. perm. appeal filed* (standing for the proposition that a finding of severe abuse as to one child may serve to terminate a parent's parental rights to that child's siblings).

The final issue we address is whether termination of Father's parental rights is in the Children's best interest. Father does not raise this as an issue on appeal. Courts look to the factors contained at Tenn. Code Ann. § 36-1-113(i) in making best interest determinations in parental rights cases. The Juvenile Court made detailed findings as to best interest, and the evidence does not preponderate against those findings. The Children have had precious little stability in their lives owing in no small part to Father's habitual drug abuse. The evidence in the record on appeal is that the Children now are in caring pre-adoptive homes. Perpetuating Father's parental rights to the Children would be contrary to their best interest. We find, as did the Juvenile Court, that the evidence is clear and convincing such that termination of Father's parental rights is in the Children's best interest.

## Conclusion

We affirm the judgment of the Juvenile Court terminating Father's parental rights to the Children based upon the ground of severe child abuse. We also affirm the Juvenile Court's finding that termination of Father's parental rights is in the Children's best interest. However, for the reasons stated above, we reverse the grounds of wanton disregard and persistent conditions. The judgment of the Juvenile Court, therefore, is affirmed, in part, and, reversed, in part, and this cause is remanded to the Juvenile Court for collection of the costs below. The costs on appeal are assessed against the Appellant, Remus W., and his surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE